PETER ADKINSON, *alias* LEWIS WHITE *v.* STATE OF
TENNESSEE.

1. CRIMINAL LAW. *Burglary.* The Code definition of burglary, and the statutes on the subject, do not apply to the case of a party who, secreting himself in a mansion house by night with intent to commit a felony, is discovered, and to enable himself to escape by flight from

the house opens or unlocks a door. There must be a breaking as well as an entry in order to make the offense.

Code cited: Sec. 4672–4.

Authorities cited: Cooly's Black., book 4, 226–7; Wheaton Cr. Law, 1536–46.

2. SAME. *Breaking after entry.* Sec. 4674 of the Code cannot mean that breaking after abandonment of the purpose, and for a different purpose than the commission of of a felony, shall be referred arbitrarily to the felonious design. A party who by tresspass enters a house with design to steal, who changes his mind and abandons that purpose, but in going out unlocks a door for egress, would not be guilty of burglary.

---

FROM DAVIDSON.

---

Appeal from Criminal Court.   THOS. N. FRAZIER, J.

ATTORNEY GENERAL HEISKELL for State.

No counsel named for defendant.

FREEMAN, J., delivered the opinion of the court.

This is an indictment, charging that defendant unlawfully, feloniously and burglariously did break and enter the mansion house of Margaret Mallon, in the night time, with the unlawful and felonious intent, then and therein, her, the said Margaret Mallon, unlawfully, forcibly, feloniously, and against her will, to ravish and have carnal knowledge of, against the peace and dignity of the State, etc.

The jury found defendant guilty as charged, and affixed punishment in the penitentiary for twelve years and six months.

The facts shown are substantially as follows:

Mrs. Mallon, a widow lady, kept a grocery store

in Nashville in the front part of her house; her bed-room and kitchen were in the rear part of the building. On the day of the alleged offense the back doors of the house were open, as well as the windows, and remaining so until about ten o'clock at night. About this time she closed the front doors, went into the back part of the house, let down the windows, shut the doors and locked them on the inside, leaving the keys in the locks. She then went to her bed and moved it from the wall in order adjust the mosquito bar, when she felt the bed strike against something under it, which she then supposed to be a dog. She went into the front room, got a candle and returned. On looking under the bed she saw the defendant lying on his side with a large pocket knife open in his hand. She ran to the front door crying robbers, asking for help, and giving a general alarm. Parties near by ran into the house, when defendant went out at the back door, unlocking it, and fled. He was pursued and soon after captured. She had known defendant some years. He had been in front of the house eating watermelons in the evening with some other negroes, and had been ordered away by her because of the dirt made by the party. He had been refused credit by her, as she says, some three years before, when he replied, "he would get even with her yet." The house of Mrs. Mallon was situated in a thickly settled part of the city—other houses close to it.

It is clear from the testimony that defendant went into the house at an open door, and secreted himself

under the bed, with the purpose, we have no doubt, of committing some felony, but what that was to be we have no means of determining, except such as are furnished by the above facts.

Burglary is defined by the Code, sec. 4672, to breaking and entering into a mansion house by night with intent to commit a felony. This is substantially the common law definition. By sec. 4674 it is provided that any person who, after having entered any of the premises mentioned in first section of the article with intent to commit a felony, break any such premises, he shall be punished in the same way as if he had broken into the premises in the first instance. This last section can only refer to a case where the party has entered without breaking actually or technically, and then, in furtherance of his felonious design, does break after entrance; as when a party enters a house without breaking, and then, in pursuance of his felonious design, break open a wardrobe, show case, or an inner door, in order to effectuate his purpose. We do not think it can apply to the case of a party who, to enable himself to escape by flight from the house, opens a door as in this case.

The question then recurs, was there such a breaking in this case as makes the offense of burglary? According to Blackstone, as well as other authorities, there must be a breaking as well as an entry in order to make the offense. This may either be by force, or by opening a door, raising the latch for the purpose, picking a lock or opening it with a key, or unloosing any fastening which the owner has provided,

or even coming down a chimney, it being as is said, as much closed as the nature of things will permit. Such breach may also be made by fraud, as by knocking at the door and procuring it to be opened, and then rushing in with felonious intent. The same author, however, lays it down as law, "but if a person leaves his doors or windows open, it is his own folly and negligence, and if a man enters therein it is no burglary; yet if he afterwards unlock an inner chamber door it is so. See Cooly's Black., book 4, 226–7.

This authority, with authorities cited in notes to the above, seems to be conclusive. We have seen nothing contrary to this, and think the principles cited are sound law. It is insisted, however, by the Attorney General that unlocking the door for flight makes the breaking required in this offense, under sec. 4674 of the Code, which is; "Any person who, after having entered any of the premises mentioned in the first section of this article with intent to commit a felony, break such premises, he shall be punished in the same way as if he had broken into the premises in the first instance." This, however, is nothing more than the principle of the common law, that breaking in furtherance of the design, that is felonious purpose, after entry, makes out the offense. It cannot mean that breaking after abandonment of the purpose, and for a different purpose than the commission of a felony, shall be referred arbitrarily to the felonious design. If this should be held, a party who, by trespass, enters a house with design to steal, who changes his mind and abandons that purpose, but in going out of

the house unlocks a door for egress, would be guilty of burglary. We cannot assent .to this view of the question. The door, in this case, was unlocked for escape from the house, not for entrance or in forwarding a felonious design. There was no felonious breaking in this view. We have been referred to Tibbs' Cr. Cases, *Rex* v. *McKearney*, as sustaining his views. That case, however, was where the indictment had a count for breaking out of the house, which was expressly made burglary by statute. 12 Anne, ch. 1, sec. 7. See Wheat. Cr. Law, 1874, sub secs. 1536, 1546.

Judgment will be reversed and the cause remanded.