## CHARLEY SIMPSON v. STATE.

No. A-265.   Opinion Filed February 6, 1911.

(113 Pac. 549.)

1.   INDICTMENT  AND  INFORMATION—Sufficiency—Felonies— Language of Statute. An indictment for a felony, although in the language of the statute, is not sufficient, unless it states all facts necessary to constitute the offense with sufficient certainty.

2.   BURGLARY—Sufficiency of Indictment—Allegation of Ownership. (a) An indictment for burglary, whether at common law or under statute, must allege every fact and circumstance necessary to constitute the offense. including time, place, ownership, and description of the premises.

(b) An allegation of ownership, in an indictment for burglary, is sufficient if laid in the lessee or tenant in possession.

3.   BURGLARY—"Dwelling House"—Poolroom of Hotel. A hotel is a "dwelling house" within the meaning of the law, when it is continuously used as a place of habitation. A dwelling house, under our statute, includes all buildings attached to and used in connection with the house usually lived in, and embraces a pool hall joining the main hotel building and connected by a large archway, when both businesses are operated together.

(Syllabus by the Court.)

*Appeal from District Court, Grady County; Frank M. Bailey, Judge.*

Charley Simpson was convicted of burglary in the second degree, and he appeals. Reversed and remanded, with directions.

*F. E. Riddle,* for appellant.—Citing: *State v. Forkler,* 22 Kan. 542; *Winslow v. State* (Neb.) 41 N. W. 1116; *State v. Schuchman,* 33 S. W. 35, 34 S. W. 842; *Thomas v. State* (Ala.)

12 South. 409; *Bickford v. People*, 39 Mich. 210; *Neill v. State*, 55 Ala. 466; *Moore v. People* (Mich.) 11 N. W. 415; *Potter v. State*, 92 Ala. 37; *State v. Hutchinson*, 111 Mo. 257; *People v. Calderwood*, 66 Mich. 92; *Quinn v. People*, 71 N. Y. 561; *Fuller v. State*, 48 Ala. 273; *Ex parte Vincent*, 26 Ala. 145; *People v. Griffen*, 77 Mich. 585; *People v. St. Clair*, 38 Cal. 137; *State v. Clark*, 42 Vt. 629; *Colbert v. State*, 91 Ga. 705; *Mitchell v. Com.*, 88 Ky. 349; *State v. Atkinson* (Wis.) 58 N. W. 1034; *Com. v. Hayden*, 150 Mass. 332; *Givens v. State*, 40 Fla. 200; *People v. Barnes*, 48 Cal. 551; *State v. Dale*, 141 Mo. 284; *Hays v. Com.*, 33 S. W. 1104; *St. Louis v. State* (Tex. Cr. R.) 59 S. W. 889; *People v. Parker*, 91 Cal. 91.

*Smith C. Matson*, Asst. Atty. Gen., for the State.—Citing: *Markham v. State*, 25 Ga. 52; *State v. Jaynes*, 78 N. C. 504; *Webb v. State*, 52 Ala. 422; *White v. State*, 49 Ala. 344.

ARMSTRONG, JUDGE. The indictment in this case was returned by the grand jury of Grady county at the April, 1908, term. The appellant was arraigned in May, 1909, and filed a demurrer to the indictment, raising, among other things, the question that the indictment failed to allege the ownership of the building burglarized, and, generally, the sufficiency of the indictment. The demurrer was overruled, and he excepted; the case went to trial, and, at the close of the testimony of the state, the appellant filed a motion requesting the court to advise the jury to return a verdict for him, which motion was overruled, and he excepted. There was no testimony offered by the appellant, defendant below. The jury was instructed by the court as to the law, and after deliberation returned into court a verdict of guilty, assessing a punishment of two years in the penitentiary on the appellant. He excepted to the verdict and filed a motion for a new trial, setting up, among other things, the error of the court in overruling his request for an instructed verdict. The motion was overruled, and he excepted. An appeal was prayed and granted, and this case is here regularly.

There are a number of assignments of error in this record. The only questions we deem it necessary to determine, however,

are the sufficiency of the indictment and the degree of the offense this appellant should be charged with, as disclosed by the proof before us.

The charging part of the indictment is as follows:

"That Charley Simpson did intentionally, unlawfully, wilfully, feloniously, and burglariously, in the nighttime, did break and enter the building occupied by Horace Humphreys, in which the said Horace Humphreys was conducting a billiard and pool hall, and in which said pool hall the money and valuable things, the personal property of the said Horace Humphreys, were kept and being, and with the unlawful, wilful, felonious, and burglarious intent, then and there of the said Charley Simpson, the money and valuable things the personal property of the said Horace Humphreys, in said building, then and there being and kept, then and there to unlawfully, wilfully, feloniously, and burglariously steal, take, and carry away by stealth."

This part of the indictment clearly shows that the pleader intended to charge burglary in the second degree. We think the indictment is insufficient. Proceedings had in the court below, as disclosed by the record, indicate clearly that the defendant was tried on the theory that he was guilty of burglary in the second degree.

Ordinarily an indictment for a felony which follows the language of the statute is sufficient, if all the facts necessary to constitute the offense are thereby stated, and stated with sufficient certainty. The great weight of authority holds that an indictment for burglary, whether at common law or under statute, must allege every fact and circumstance which is necessary to constitute the offense with sufficient certainty as to time, place, ownership, and description of the premises, to inform the accused of the particular crime of which he is charged. 6 Cyc. 200; *State v. Dale,* 141 Mo. 284, 42 S. W. 722, 64 Am. St. Rep. 513; 1 Bish. New Crim. Proc. §§ 81, 519; *Winslow v. State,* 26 Neb. 308, 41 N. W. 1116; *Hays v. Com.,* 33 S. W. 1104; *St. Louis v. State* (Tex. Cr. R.) 59 S. W. 889. If there is a complete description of the property burglarized, some of the courts hold that it is then not necessary to allege the ownership. *People v. Parker,* 91 Cal. 91, 27 Pac. 537. The better rule, however, is to allege it; and

for that purpose it is sufficient to allege the ownership in the lessee or tenant in possession. The Alabama Supreme Court and a large number of others have determined this question in accordance with the view here expressed. It will be observed that the indictment in this case nowhere charges the ownership of the house alleged to have been burglarized, and nowhere describes the same. The Supreme Court of Nebraska, in the case of *Winslow v. State,* construing a statute almost identical with ours, and in discussing an indictment practically in the form of the one before us, with the exception that the indictment there was more definite, having·alleged the location of the building in a certain town, says:

"In cases of this kind there must be an allegation of ownership. * * * The lawful occupancy of the property by one in possession is sufficient to justify an allegation that he is the owner."

Some of the courts hold that it is necessary to allege the ownership in the person who holds the fee title to the property, if known. This seems to be the Kansas rule, as stated in *State v. Fockler*, 22 Kan. 542; but the better rule appears to be to lay the ownership in the one rightfully in possession, and prove the same as alleged. *Thomas v. State,* 97 Ala. 3, 12 South. 409; Whart. Crim. Law, vol. 1, § 816. We think either would be sufficient. An examination of those authorities and many others forces us to conclude that this indictment is insufficient. The court below, therefore, erred in overruling the demurrer.

The appellant insists that, if he is guilty of burglary at all, he is guilty of burglary in the first degree. We are inclined to agree with this contention. The testimony shows that Horace Humphreys, with his family, lives ·in· the New Early Hotel building in Chickasha; that he operates a pool hall in the room this appellant is charged with having burglarized, which room is adjoining the hotel, under the same roof and operated in connection with the hotel business; that Humphreys cut a large archway in the wall between the pool room and the office of the hotel and moved his cigar business into the pool room, and that all the business was conducted together by him.

The witness Turntine testified as follows (record, pp. 36, 37):

"Q. Where did you live at that time [referring to the date of the alleged burglary]? A. I made my home at the Early Hotel. Q. You were living there? A. Yes, sir. Q. Humphrey and his family lived in the hotel at that time? A. Yes, sir. Q. This pool hall you were speaking of is connected with the hotel—is one room with the hotel? A. Yes, sir. Q. There is a large archway leading from the office or lobby of the hotel to the pool room? A. Yes, sir; from the lobby. Q. They are both together? A. No, sir; there is an archway between. Q. It is all under one inclosure? A. Probably. Q. And this pool room is under the same roof and a part of the building of the hotel? A. Yes, sir. Q. Humphrey and his family lived there continuously during that time? A. Yes, sir. Q. Running the hotel, cigar stand, and billiard hall together and in connection? A. Yes, sir."

The witness Bennett testified as follows (record, p. 46):

"Q. Where did you live on the 9th day of April, 1908? A. At the Early Hotel. Q. For whom were you working at that time? A. Horace Humphreys. Q. What business was Mr. Humphreys engaged in there at that time? A. Running a hotel and billiard hall business."

On cross-examination (record, p. 50):

"Q. This pool room there is a part of the hotel building, and the archway goes from the office in the hotel? A. Yes, sir. Q. It is all under the same roof? A. Yes, sir. Q. This archway is closed at night? A. Yes, sir. Q. The dining room is also closed at night? A. Yes, sir."

The witness Humphreys testified as follows (record, pp. 51, 52):

"Q. Where did you live on the 9th day of April, 1908? A. Chickasha, Okla. Q. What business, if any, were you engaged in in Chickasha at that time? A. Hotel business, billiard, and pool hall. Q. Was there any valuable thing besides money in that building that night? A. The usual stock of cigars, etc. Q. Who did that property belong to that was in that building? A. To myself."

Cross-examination of Horace Humphreys (record, p. 58):

"Q. You were a married man at that time (referring to the date of the alleged burglary)? A. Yes, sir. Q. Where did you and your family live on the date of the alleged burglary? A. Early

Hotel. Q. The pool hall you spoke of was ·a room in connection with the hotel building, was it not? A. Yes, sir. Q. And opened out into the poolroom where the money was taken ,from? A. Yes, sir. Q. It was all under the same roof and. a part of the same building? A. Yes, sir."

Redirect examination:

"Q. You state that the pool hall and the Early Hotel were together; is it not two buildings, and was not the doorway cut, after you took charge of it, from the hotel to the pool room? A. After I put this pool hall in that room I consolidated the cigar business of the hotel and cut an archway between the two rooms. Q. They were different rooms? A. Yes, sir; previous to that time."

Under our statute this proof is sufficient to sustain a conviction for burglary in the first degree. The Supreme Court of Missouri (*State v. Hutchinson*, 111 Mo. 257, 20 S. W. 34), in discussing the proposition of what constitutes a dwelling house within the meaning of the burglary statute, says "that the phrase 'part of a dwelling house' means a part of the building which constitutes a dwelling house," and holds that:

"Where a room was separated from another by about four feet, both being inclosed under the same roof, and connected by porches on each side extending from the door of one to the door of the other, in one of which rooms a person lived· and the other being used for storing and keeping things not in immediate use, the latter room is a part of the dwelling house, though there be no internal communication between this room· and the other."

The case before us is a stronger case, because there was internal communication between the room in which the burglary is charged to have been. committed and the principal dwelling.

The Supreme Court of New Jersey, in the case of *Rogers v. Troth,* 36 N. J. Law, 422, holds that the term "dwelling house," within the meaning of the statute prohibiting the pulling down or removal of any dwelling house in the construction of roads, includes all buildings attached to and used in connection with the house in which persons dwelt or usually lived, and therefore it was held to embrace a billiard saloon attached to a hotel and always used in connection with, and as a part thereof, for business purposes, though not actually dwelt in by persons.

A dwelling house is the apartment, building, or cluster of buildings used and occupied as a place of abode. *Fuller v. State,* 48 Ala. 273; *Ex parte Vincent,* 26 Ala. 145, 62 Am. Dec. 714; *Mitchell v. Com.,* 88 Ky. 349, 11 S. W. 209; *People v. Griffen,* 77 Mich. 585, 43 N. W. 1061. Hotels are dwelling houses, within the meaning of the law, when they are continuously used as a place of habitation. *People v. St. Clair,* 38 Cal. 137; *State v. Clark,* 42 Vt. 629; *Colbert v. State,* 91 Ga. 705, 17 S. E. 840.

We are satisfied that the appellant should have been charged with burglary in the first degree.

For the reasons herein set forth, this cause is reversed and remanded, with directions to the sheriff to take charge of the appellant and to the court below to set aside the indictment, and have the appellant proceeded against for burglary in the first degree.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.