BUSBY v. STATE
2022 OK CR 4
Case Number: S-2021-18
Decided: 02/17/2022
THE STATE OF OKLAHOMA, Appellant v. PATRICK ALEXANDER BUSBY, Appellee.
Cite as: 2022 OK CR 4, __ __

 

 

O P I N I O N

LEWIS, JUDGE:

¶1 The State of Oklahoma brings this appeal from an adverse ruling by a preliminary hearing magistrate in Cleveland County District Court case number CF-2020-849.

¶2 This appeal is from the finding of insufficient evidence at the preliminary hearing. "The purpose of the preliminary hearing is to establish probable cause that a crime was committed and probable cause that the defendant committed the crime." 22 O.S.2011, § 258State v. Haliburton, 2018 OK CR 28429 P.3d 997Id. An abuse of discretion has also been described as a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented. Id.

I.

¶3 The sole issue raised by the State is whether there was sufficient evidence presented at preliminary hearing to prove the element of breaking an outer door or wall for the crime of burglary in the first degree. Specifically, whether the crime of first degree burglary may be committed by forcible entry into a door leading from a garage into a dwelling.

II.

¶4 The relevant facts presented at preliminary hearing were that the defendant was arguing with the resident of a house in the garage where the large overhead garage door was left open. The resident, who had a relationship with the appellee, told him not to enter the house, but he ignored her request and opened the door leading from the garage into the dwelling portion of the house. The dwelling was occupied at the time of the entry.

III.

¶5 The trial court's decision hinged on whether this door leading from the garage into the house was an outer door. The trial court relied on Hendricks v. State, 1985 OK CR 39698 P.2d 477overruled in part by Parker v. State, 1996 OK CR 19917 P.2d 98021 O.S.2011, § 1431Hendricks may be read to support that conclusion, but that reading is a narrow reading not supported by the definition of a "dwelling house" and the elements of first degree burglary found in Oklahoma statutes.

¶6 First degree burglary is accomplished, as relevant to this case, by breaking into and entering the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein, by forcibly bursting or breaking an outer door of such house. 21 O.S.2011, § 143121 O.S.2001, § 1439

¶7 This definition provides that breaking into a building adjoining an occupied dwelling may form the basis for a first degree burglary charge. This expands the definition of a dwelling, but does not change the purpose of the first degree burglary statute--to punish those who enter an occupied dwelling by force (however slight).

¶8 In Hendricks the defendant broke into an unoccupied house. The occupant arrived home during her lunch break. The defendant exited the residence, but came back in through an undescribed opening in the garage, then opened the inner door from the garage into the now occupied house. The defendant assaulted the victim inside the residence.

¶9 This Court held that the Information was insufficient to charge the offense first degree burglary because the Information alleged that the defendant committed the crime by "entering through an opening in the garage and breaking open the inner door of the said dwelling house." Hendricks, 1985 OK CR 39Id. 1985 OK CR 39

¶10 In a footnote this Court said that the door broken by the defendant "was truly inside the residence, and its breaking could not constitute first degree burglary." Id. 1985 OK CR 39dicta in Hendricks. See Wainwright v. Witt, 469 U.S. 412, 422 (1985) (holding statements in a footnote were dicta because they were unnecessary to decide a case).

¶11 The first degree burglary charge in Hendricks was reversed not because the defendant's actions failed to fall under the first degree burglary statute, but because the Information did not charge a first degree burglary offense.Hendricks to make a blanket statement that the door in question could never be an exterior door is misplaced. The inner versus outer door determination cannot be made by a bright line rule. It must be made by looking at the facts of a particular case. Because Hendricks does not resolve this issue, the issue is one of first impression.

¶12 The only case directly on point that discusses this issue in depth is Lacey v. Commonwealth, 675 S.E.2d 846 (Va.App. 2009). Lacey is not controlling precedent with this Court, but we look to it to analyze the law as it relates to our case.

¶13 In Lacey, the court held that a defendant's daytime entry into an opened garage door (one of two garage doors were open) then further entry from the garage through a closed door into a utility room and further into the house where he stole money did not constitute the crime of burglary. Id. at 852. The court reasoned that the garage was an integral part of the dwelling because the garage shared a roof and wall with the other portions of the house, the garage connected with other portions of the house, and the garage was used for ordinary household functions. Id. at 852.

¶14 The cases cited in Lacey are cases where a person breaks into a garage. In these cases, courts hold that the garage is part of the dwelling because they are integral to the house structure. They simply form one room of several making up a dwelling, or are used for storage of household goods. There is no doubt under Oklahoma law that breaking into an attached garage is first degree burglary. See 21 O.S.2011, § 1439Lacey are not helpful to our analysis because they expand the definition of a dwelling just as Section 1439 does in Oklahoma.

¶15 We find that, therefore, the analysis in Lacey is flawed. The court in Lacey discounts a Virginia case which points out the reasons for a separate burglary of an occupied dwelling statute. In Yeatts v. Commonwealth, 410 S.E.2d 254, 266 (Va. 1991), the Virginia Supreme Court stated, "The burglary statutes exist to protect against 'the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence."Cleary v. State, 1997 OK CR 35942 P.2d 736

¶16 This rationale leads this Court to believe that the legislature intended to expand the ways first degree burglary may be accomplished by expanding the footprint of a dwelling to include attached garages and outbuildings. This expansion does not diminish the methods that first degree burglary may be completed.

¶17 Our conclusion that first degree burglary may be completed by a breaking of the door leading between the garage and the living area of a dwelling makes logical sense. The door leading from a garage is a door unlike any interior door; for example, building codes treat this door specially.

¶18 The International Residential Code (IRC) has special safety standards for a door that separates the garage from the house interior.

Openings from a private garage directly into a room used for sleeping purposes shall not be permitted. Other openings between the garage and residence shall be equipped with solid wood doors not less than 18 inches (35 mm) in thickness, solid or honeycomb-core steel doors not less than 18 inches (35 mm) thick, or 20-minute fire-rated doors, equipped with a self-closing or automatic-closing device.

¶19 These codes protect a dwelling from fire hazards usually stored in a garage and from the carbon monoxide fumes emitted from vehicles that might be parked therein.

¶20 When a garage is utilized in the manner a garage was designed to be used, while it may be an integral part of the house, it is a separate part of a house. It does not form part of the everyday activity of "dwelling." One does not simply dwell in their garage. In fact, dwell means to exist or to remain for a time or to live in a place.

¶21 These garages usually have large overhead garage doors which are vulnerable and are many times left open during the day, and sometimes accidently during the night. When these doors are left open, the garage becomes nothing more than a carport and the door leading from the garage to the interior of the house becomes the outer door. When this door becomes the outer door, it may be the outdoor door sufficient to come under the requirements for first degree burglary. The burden is still on the State to show whether the door leading from the garage into a home is an outer door as defined by statute under the particular facts of a case.

¶22 Any language in Hendricks which is contrary to this decision is overruled. Our earlier cases which support the notion that breaking into a structure attached to an occupied dwelling may constitute first degree burglary are still valid.

DECISION

¶23 The order of the District Court of Cleveland County affirming the magistrate's order is REVERSED. This case is REMANDED to the District Court of Cleveland County for further proceedings consistent with this opinion. Pursuant to Rule 3.15, Rules, supra, the MANDATE is ORDERED issued upon the filing of this decision.

APPEAL FROM THE DISTRICT COURT OF CLEVELAND COUNTY
THE HONORABLE LEAH EDWARDS, DISTRICT JUDGE

 

 
 
 
 APPEARANCES AT TRIAL
 
 
 APPEARANCES ON APPEAL
 
 
 
 
 TYLER BOX
 BENJAMIN MUNDA
 OVERMAN LEGAL GROUP
 809 N.W. 36TH STREET
 OKLAHOMA CITY, OK 73118
 ATTORNEYS FOR DEFENDANT
 
 
 PATRICK CROWE
 ASST. DISTRICT ATTORNEY
 CLEVELAND COUNTY
 201 S. JONES, STE. 300
 NORMAN, OK 73069
 ATTORNEY FOR APPELLANT
 
 
 
 
 PATRICK CROWE
 ASST. DISTRICT ATTORNEY
 CLEVELAND COUNTY
 201 S. JONES, STE. 300
 NORMAN, OK 73069
 ATTORNEY FOR THE STATE
 
 
 TYLER BOX
 BENJAMIN MUNDA
 OVERMAN LEGAL GROUP
 809 N.W. 36TH STREET
 OKLAHOMA CITY, OK 73118
 ATTORNEYS FOR APPELLEE
 
 
 

 

 

OPINION BY: LEWIS, J.
ROWLAND, P.J.: Specially Concur
HUDSON, V.P.J.: Dissents
LUMPKIN, J.: Concur

FOOTNOTES

22 O.S.2021, § 1089.1Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022). Oral argument was held September 2, 2021.

See Cleary v. State, 1997 OK CR 35942 P.2d 736

dicta. Here, however, the footnote is clearly dicta.

[D]icta "is an expression in a court's opinion which goes beyond the facts before the court and therefore is an individual view of the author and is not binding in subsequent cases." See Cohee v. State, 1997 OK CR 30942 P.2d 211

Brown v. State, 2018 OK CR 3422 P.3d 155

Hendricks was decided before our decision in Parker v. State, 1996 OK CR 19917 P.2d 980

Lacey, 675 S.E.2d at 850.

International Code Council, Falls Church, Va. (2021).

 

 

ROWLAND, PRESIDING JUDGE, SPECIALLY CONCURRING:

¶1 I concur in Judge Lewis's opinion, and I would add that I find Hendricks v. State, 1985 OK CR 39698 P.2d 477Hendricks the defendant was charged with committing first-degree burglary "by entering through an opening in the garage and breaking open the inner door of the said dwelling house." Hendricks, 1985 OK CR 39698 P.2d at 479. The statute under which he was charged forbade breaking "an outer door." 21 O.S.1981, § 1431Hendricks is therefore that an inner door is not an outer door.

¶2 As the majority notes, the Hendricks opinion states that the door from the garage to the kitchen, "was truly inside the residence, and its breaking could not constitute first degree burglary." Hendricks, 1985 OK CR 39

¶3 Breaking for purposes of burglary means some physical act to remove an obstacle to entry, and walking through an open door or climbing through an open window is not sufficient to prove a breaking. Even climbing through a missing ceiling tile, seven to eight feet off the ground and outside over the doorway to a business, will not constitute a breaking since no obstacle had to be removed to gain entry. Yeager v. State, 1946 OK CR 57169 P.2d 579Pack v. State, 1991 OK CR 109819 P.2d 280

¶4 In a similar vein, walking through an open garage door clearly is not a breaking, but the closed door from the garage into the residence then becomes the barrier to the outside world, i.e., the "outer door." In fact, including the attached garage within the reach of the residential burglary statutes presupposes the overhead door is closed; when that door is raised there would never be a breaking and thus would never be a burglary. One who leaves their overhead garage door raised, whether intentionally during the daytime, by accident, or because it is broken, should not forfeit their protection under the burglary statutes and render their home fair game for would-be burglars.

¶5 To the degree that an outer door is the one that keeps animals and intruders out of one's dwelling, a person has the right to determine what and where their outer door is. They might leave the front wooden door open with the screen door closed, and in such a case opening and entering through the screen would constitute a breaking. See Yeargin v. State, 1932 OK CR 16314 P.2d 431

 

 

HUDSON, VICE PRESIDING JUDGE, DISSENTING:

1. Introduction

¶1 The majority opinion wrongly concludes that first degree burglary occurs when a person enters the occupied dwelling house of another through an open overhead garage door and then breaks and enters an inner door of the house with intent to commit some crime therein. The plain language of the first degree burglary statute precludes this result as does the overall structure and evolutionary history of our burglary laws. I therefore dissent to today's decision.

2. Facts 

¶2 The majority opinion does not provide a complete discussion of the record evidence. I find the facts of this case provide critical context showing the folly of today's decision. I therefore provide a brief summary of the testimony. On July 30, 2020, at approximately 9:00 p.m., Appellee rang the doorbell and spoke with Mandy Greene on her front porch. The two were in a dating relationship and, according to Greene, Appellee was always welcome at her home. On this day, however, Greene was trying to prevent an altercation between Appellee and her new lover, Michael Kauble, who was inside the house. An argument between Greene, who was pregnant, and Appellee ensued on the front porch. The overhead door to Greene's attached garage was open and the pair quickly moved their argument inside the garage. Although Greene implicitly invited Appellee into her garage, she later begged him during their argument not to enter the rest of the house. Appellee ignored Greene's pleas and opened the walk-through door leading from the garage to the rest of the house. Appellee then walked inside the living room and back to Greene's bedroom where he started pounding on the closed bathroom door. Appellee demanded to speak with Kauble who, by this point, was hiding in the bathroom. Fearing for his safety, Kauble shot Appellee as he forced his way inside the bathroom.

¶3 The State charged Appellee with first degree burglary for breaking and entering Greene's occupied dwelling house with the intent to commit the misdemeanor crime of assault and battery on Kauble. At preliminary hearing, the Magistrate granted a defense demurrer, and dismissed the case, finding that the act of breaking and entering an inner door connecting the garage to the rest of the house was insufficient to support a charge of first degree burglary as defined by 21 O.S.2011, § 1431

3. Standard of Review

¶4 The present case requires us to interpret and apply Section 1431. Our duty when interpreting a statute "is to determine and give effect to the intention of the Legislature." Newlun v. State, 2015 OK CR 7348 P.3d 209Id. When the statutory language is unambiguous, our job is at an end. Id. "We must hold a statute to mean what it plainly expresses and cannot resort to interpretive devices to create a different meaning." Id. "A statute should be given a construction according to the fair import of its words taken in their usual sense, in conjunction with the context, and with reference to the purpose of the provision." State v. Iven, 2014 OK CR 8335 P.3d 264Blevins v. W.A. Graham Co., 1919 OK 147182 P. 247

4. Oklahoma's Burglary Statutes

¶5 The current first degree burglary statute originated at statehood. See Okla. Rev. Laws of 1910, § 2611; 21 O.S.1941, § 143121 O.S.2011, § 143121 O.S.Supp.1979, § 1431

Every person who breaks into and enters the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein, either:

1. By forcibly bursting or breaking the wall, or an outer door, window, or shutter of a window of such house or the lock or bolts of such door, or the fastening of such window or shutter; or

2. By breaking in any other manner, being armed with a dangerous weapon or being aided by one or more confederates then actually present; or

3. By unlocking an outer door by means of false keys or by picking the lock thereof, or by lifting a latch or opening a window, is guilty of burglary in the first degree.

21 O.S.2011, § 1431

¶6 The crime of second degree burglary, by contrast, took a much different path. In 1941, the Legislature undertook a major revision of Oklahoma's second degree burglary statutes. The Legislature repealed multiple statehood-era statutes codifying various definitions of second degree burglary. See Okla. Rev. Laws of 1910, §§ 2612-14; 1941 Okla. Sess. Laws 87. One of those repealed statutes is relevant for present purposes. Section 2613 addressed entry through an open outer door, followed by the breaking of an inner door, in the night time:

Any person who, having entered the dwelling house of another in the night time, through an open door or window, or other aperture not made by such person, breaks any inner door, window, partition or other part of such house, with intent to commit any crime, is guilty of burglary in the second degree.

See Okla. Rev. Laws of 1910, § 2613 (emphasis added).

¶7 Section 2613 plainly addressed the type of fact pattern found in the present case where Appellee entered the dwelling house through an open exterior door and then gained access to the residence by breaking an inner door leading to some other part of the house. Under Section 2613, the dwelling house could be occupied by another human, or not, so long as the breaking occurred to an inner door with intent to commit any crime. This stands in sharp contrast to the statutory definition of first degree burglary which, then and now, requires a breaking and entering through an outer door of an occupied dwelling house.

¶8 As part of the 1941 revisions to our burglary law, the Legislature repealed § 2613 and enacted the following comprehensive definition of second degree burglary:

Every person who breaks and enters any building or any part of any building, room, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection in which any property is kept, with intent to steal therein or to commit any felony, is guilty of burglary in the second degree.

21 O.S.1941, § 1435See Okla. Rev. Laws of 1910, §§ 2615; 1941 Okla. Sess. Laws 87. Over time, the definition of second degree burglary was amended to include breaking into or forcibly opening coin-operated machines, vending machines and other devices. See 21 O.S.1961, § 1435See 21 O.S.1961, § 1435

¶9 In 2018, the Legislature again revised the crime of second degree burglary to include the breaking and entering of "the dwelling house of another, in which there is at the time no human being present," or "any commercial building or any part of any building, room, . . . or other structure or erection in which any property is kept . . . with intent to steal any property therein or to commit any felony[.]" 21 O.S.Supp.2018, § 1435

¶10 One other burglary-related statute is critically important for present purposes. Since statehood, the Legislature has consistently defined the term "dwelling house" as used in the burglary statutes to include "every house or edifice, any part of which has usually been occupied by any person lodging therein at night, and any structure joined to and immediately connected with such a house or edifice." 21 O.S.2011, § 1439See also Okla. Rev. Laws of 1910, § 2619; OUJI-CR (2d) No. 5-18 (defining "dwelling"). This statute also remains in force today and governs the present case.

5. Analysis

¶11 Several conclusions are apparent from the legislative development of our burglary crimes over time, the plain language of the current burglary statutes and the facts of this case.

¶12 First, the plain language of the first degree burglary statute contemplates breaking an outer door to gain entry to the dwelling house--not entry to the dwelling house through an open outer door followed by the breaking of an inner door somewhere within the home's interior. The majority extends the first degree burglary statute to this very scenario, contrary to and in spite of the Legislature's plainly expressed intent in the statute. 21 O.S.2011, § 1431See also Beecham v. United States, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well"). An interior door connecting the garage to other portions of the house does not belong in the same category as an exterior wall, outer door or window even if the overhead garage door happens to be raised.

¶13 Second, an attached garage from which access may be had into the house is a part of the "dwelling house" as used in the first degree burglary statute. See 21 O.S.2011, § 1439See Tate v. State, 1976 OK CR 296556 P.2d 1014 Harris v. State, 1928 OK CR 314271 P. 957Simpson v. State, 1911 OK CR 34113 P. 549

¶14 Section 1439(A), along with our decisions interpreting that provision, makes crystal clear that an attached garage is part of the dwelling house without restriction or limitation. Combined with the plain language of Section 1431(1), which unambiguously commands that a defendant may commit first degree burglary only if he commits a breaking and an entering through some exterior physical boundary to the residence like an outer door, wall or window, there is no question the Magistrate's demurrer to the evidence in this case was correct. The record before us shows Appellee entered Greene's "dwelling house" consensually when his argument with Greene moved from the front porch into the attached garage. See OUJI-CR (2d) No. 5-18 (defining "dwelling"). On these facts, Appellee simply did not break an outer door as required to establish first degree burglary under Oklahoma law.

¶15 Third, the crime of second degree burglary addresses entry to the dwelling house through an open outer door followed by the breaking of an inner door within the home's interior. The crime of first degree burglary does not. Had the Legislature intended for the breaking of an inner door to suffice under the first degree burglary statute, it could easily have included nonrestrictive language in Section 1431 similar to that found in the second degree burglary statute or the now-repealed Section 2613 which prescribed entry "through an open outer door or window" followed by the breaking of "any inner door, window, partition or other part of the [dwelling] house[,]" with the intent to commit any crime. See Okla. Rev. Laws of 1910, § 2613.

¶16 The majority, ignoring the legislative intent underlying the definitions of burglary contained within the unambiguous plain language of the first and second degree burglary statutes, erroneously elevates residential burglaries involving the breaking of an inner door to the status of first degree burglary. This approach blurs the lines between first and second degree burglary and unwisely risks absurd results in future cases.

¶17 As a means of circumventing the plain language of these statutes, the majority opinion spends a great deal of time trying to show 1) that a garage is not really part of the dwelling house when the overhead garage door is raised and 2) that an inner door connecting the garage with the rest of the house is really an outer door.

¶18 The majority's opinion further snubs Oklahoma's long established statutory definition of a "dwelling house" by surreptitiously replacing it with a Merriam-Webster dictionary-definition of "dwelling" and then generalizing that because people do not typically "dwell" in the garage if it "is utilized in the manner a garage was designed to be used," it is not really part of the dwelling.should be used as opposed to the many ways in which they actually are used. True, some garages are used as storage units to pack away junk or solely to park cars. But that is not true of all.

¶19 Easily transportable valuables are often kept inside attached garages--cars, tools, lawn mowers, bikes, and golf clubs to name a few. It is also easy to find homes in our neighborhoods and communities where attached garages are used as dedicated workshops, exercise rooms, extended living spaces, hobby and craft rooms, game rooms and places to do laundry. Some attached garages have showers and bathrooms. Some are equipped with televisions and telephones. Some garages are even used to operate small businesses.

¶20 Taken in this light, there can be no rational dispute over what the plain, unambiguous language of the first degree burglary statute does and does not cover. The Legislature chose that first degree burglary as a crime shall not apply when the breaking occurs to an inner door of the dwelling house, as opposed to an outer door, like in the present case. We are duty-bound to honor the Legislature's policy decisions on this topic even if the majority believes the language of the statute is short-sighted or somehow incomplete.

¶21 Today's decision not only contradicts the plain language of the relevant burglary statutes, but also ignores the historical context in which this statutory language emerged. I cannot endorse an alternative interpretation of these statutes when the Legislature's meaning is clear and unambiguous. Appropriately applying the plain language of the first degree burglary statute to the facts of this case, the Magistrate did not abuse her discretion in granting the defense demurrer at preliminary hearing and dismissing this case.

¶22 There is no evidence in the record suggesting the inner door connecting the garage to the rest of Greene's house was ever considered an "outer door" by the victim or anyone else. The record suggests only that the overhead garage door happened to be open during the incident, Greene implicitly invited Appellee to enter the garage, and the breaking of the inner walk-through door was the only breaking that occurred. The record does not show this was a situation where the overhead garage door was permanently opened to the outside, that the inner walk-through door was configured to lead directly to the outside or that the garage amounted to an outdoor carport. So, even if the majority's version of the law was accurate--and it most certainly is not--the facts independently undermine the majority's analysis.

6. Conclusion

¶23 Based on the governing law and facts, the Magistrate did not abuse her discretion in granting Appellee's demurrer to the charge of first degree burglary. I therefore dissent to today's decision.

FOOTNOTES

People v. Nolan, 22 Mich. 229, 232 (1871) (citing 4 Blackstone's Commentaries on the Laws of England at 224). See, e.g., Martin v. State, 1 Tex. App. 525, 530-31 (1877); Adkinson v. State, 64 Tenn. 569, 573 (1875); State v. Scripture, 42 N.H. 485, 488 (1861).

Dickens v. State, "[w]hen applying 'textualism' appellate courts are bound by the plain, objective meaning of the text of the statute. That approach provides consistency, ensures discipline for appellate judges, and upholds the Rule of Law." 2005 OK CR 4106 P.3d 599Id. (internal citation omitted).

inner door connecting the garage with the rest of the house into an outer door is tenuous, unpersuasive and somewhat disconcerting.

in their garage is irrelevant to the determination of whether it is part of the dwelling house. The pivotal question is whether the garage is "joined to and immediately connected with . . . the house or edifice[.]" 21 O.S.2011, § 1439

Hendricks v. State, 1985 OK CR 39698 P.2d 477Parker v. State, 1996 OK CR 19917 P.2d 980Cleary v. State, 1997 OK CR 35942 P.2d 736Hendricks court obviously understood the proper historical context in which to interpret the plain language of the burglary statutes; the majority opinion in the present case does not. Even if one believes the majority's claim that footnote one in Hendricks is mere dicta--and that is a highly debatable proposition--it cannot be denied in light of the foregoing that Hendricks got the law right when it held the breaking of an inner door of the dwelling house (which in that case happened to be the inner door connecting the garage to the kitchen) does not fall within any of the three statutory modes of committing first degree burglary under Section 1431. The plain language of the statute, and the choices made by the Legislature since statehood in defining our burglary crimes, shows Hendricks was correct in its approach to this issue--including the statements made in footnote one.