FILED
United States Court of Appeals
Tenth Circuit

December 6, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ERIC JACKSON TAYLOR,

        Defendant - Appellant.

No. 16-6223
(D.C. Nos. 5:16-CV-00058-D and
5:01-CR-00128-D-1)
(W.D. Okla.)

**ORDER DENYING
CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE**, **GORSUCH,** and **McHUGH**, Circuit Judges.

Eric Jackson Taylor appeals the district court's order denying his motion under 28

U.S.C. § 2255. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we deny

Mr. Taylor's application for a certificate of appealability (COA).

## I.    BACKGROUND

On July 10, 2011, a grand jury returned an indictment charging Mr. Taylor with

the following: two counts of being a felon in possession of a firearm, in violation of 18

U.S.C. § 922(g)(1) (Counts 1 and 4); two counts of possession with intent to distribute a

controlled substance, in violation of 18 U.S.C. § 841(a)(1) (Counts 2 and 5); and two

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

counts of knowingly carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 3 and 6). Mr. Taylor pled guilty to Count 1—being a felon in possession of a firearm—and the government dismissed Counts 2 through 6.

Before sentencing, the United States Probation Office prepared a Presentence Investigation Report, which stated Mr. Taylor was subject to an enhanced sentence under the Armed Career Criminals Act (ACCA), based on three prior convictions in Oklahoma for second-degree burglary. The district court imposed the ACCA enhancement, sentencing Mr. Taylor to 188 months' imprisonment and five years' supervised release.

On January 25, 2016, Mr. Taylor filed a motion under 28 U.S.C. § 2255, seeking to vacate his sentence under *Johnson v. United States*, 135 S. Ct. 2551 (2015). The district court denied Mr. Taylor's motion on May 18, 2016, concluding that, even after *Johnson*, each of Mr. Taylor's prior convictions qualifies as a "violent felony" for purposes of the ACCA. On June 30, 2016, Mr. Taylor filed an application for leave to file a second or successive § 2255 motion, because he believed he had missed the deadline to appeal the district court's order denying his § 2255 motion. Because Mr. Taylor had sixty days to appeal and the sixty days had not yet passed, we construed his motion as a notice of appeal. On September 19, 2016, Mr. Taylor filed a combined opening brief and application for a COA.

## II.   ANALYSIS

A prisoner challenging a district court's denial of habeas corpus relief under 28 U.S.C. § 2255 must obtain a COA as a jurisdictional prerequisite to proceed with an

2

appeal. 28 U.S.C. § 2253(c)(1)(B); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the § 2255 proceedings before the district court, Mr. Taylor acknowledged the sentencing court applied an ACCA enhancement based on three prior convictions under Oklahoma state law: (1) a conviction for attempted burglary and two counts of second-degree burglary; (2) a conviction for second-degree burglary; and (3) another conviction for second-degree burglary. But Mr. Taylor argued that, after the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), his prior convictions no longer qualified as violent felonies and, as a result, the "ACCA does **not** apply to him." He therefore asserted he should be resentenced and "released immediately."

The government contended Mr. Taylor was not entitled to resentencing because *Johnson* applies only to the residual clause of the ACCA, and Mr. Taylor was not sentenced under the residual clause. The district court agreed, explaining that the ACCA's definition of "violent felony" includes felony convictions for four specific offenses, including burglary. And *Johnson* did not affect sentencing enhancements based on the ACCA's enumerated offenses. Thus, the district court concluded Mr. Taylor's prior convictions were for "violent felonies" and the ACCA sentencing enhancement applied.

3

We agree with the district court's analysis under *Johnson*. The Supreme Court in *Johnson* held only that the ACCA's residual clause was unconstitutionally vague and specifically explained that its "decision d[id] not call into question application of the [ACCA] to the four enumerated offenses," which include burglary. *Johnson*, 135 S. Ct. at 2563. Thus, *Johnson* does not afford Mr. Taylor the relief he seeks.

But on appeal, Mr. Taylor also cites *Mathis v. United States*, 136 S. Ct. 2243 (2016), a case decided after the district court denied Mr. Taylor's § 2255 motion. There, the Supreme Court explained that the ACCA imposes a fifteen-year mandatory minimum sentence if a defendant is convicted of being a felon in possession of a firearm and he or she has three prior convictions for a "violent felony," including "burglary, arson, or extortion." *Id.* at 2248 (citing 18 U.S.C. §§ 924(e)(1) and 924(e)(2)(B)(ii)). In cases where a defendant does not have the requisite prior convictions, the maximum prison sentence for being a felon in possession of a firearm is ten years. *Id.* (citing 18 U.S.C. § 924(a)(2)). Thus, before imposing the five-year enhancement under the ACCA, a sentencing court must determine whether a defendant's prior convictions qualify as one of the enumerated "violent felonies."

To make this determination, courts apply the "categorical approach," looking at the "generic versions" and "not to all variants of the [enumerated] offenses." *Id.* In the case of burglary—the relevant crime in *Mathis* and this case—courts "focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." *Id.* In other words,

4

[a] crime counts as 'burglary' under the [ACCA] if its *elements* are the same as, or narrower than, those of the generic offense. But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (*i.e.,* the facts of the crime) fits within the generic offense's boundaries.

*Id.*

*Mathis*, however, involved a particular type of statute: "one that enumerates various factual means of committing a single element" of the offense. *Id.* at 2249. Specifically, the parties agreed "Iowa's burglary statute . . . covers more conduct than generic burglary does." *Id.* The generic burglary definition contains the following elements: "an unlawful or unprivileged entry into a building or other structure, with intent to commit a crime." *Id.* at 2248 (ellipsis and citation omitted). By contrast, the Iowa statute "reaches a broader range of places: 'any building, structure *[or] land, water, or air vehicle*.'" *Id.* at 2250 (quoting Iowa Code § 702.12).

The district court in *Mathis* "imposed an ACCA enhancement on [Mr.] Mathis after inspecting the records of his prior convictions and determining that he had burgled structures, rather than vehicles." *Id.* The Eighth Circuit affirmed, similarly applying what is known as the modified categorical approach by looking at record materials to determine whether Mr. Mathis's prior offenses would qualify as generic burglary, even though the Iowa statute covered more conduct than the generic burglary definition. *Id.*

The Supreme Court reversed, holding that the district court and Eighth Circuit had erred in applying the modified categorical approach. The Court explained it had "often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." *Id.* at 2251.

5

How a given defendant actually perpetrated the crime—what we have referred to as the "underlying brute facts or means" of commission—makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence. Those longstanding principles, and the reasoning that underlies them, apply regardless of whether a statute omits or instead specifies alternative possible means of commission. The itemized construction gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition.

*Id.* at 2251 (citation omitted).

The Court further stated that "[f]or more than 25 years, our decisions have held that the prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense." *Id.* at 2247. And the Court declined to find an exception for situations "when a defendant is convicted under a statute that lists multiple, alternative means of satisfying one (or more) of its elements." *Id.* at 2248. Because the Iowa statute covered a broader range of conduct than generic burglary, Mr. Mathis's prior Iowa burglary convictions did not qualify as ACCA predicates.

Here, Mr. Taylor's ACCA enhancement was based on his three prior convictions for second-degree burglary under Okla. Stat. Ann. tit. 21, § 1435, which provides,

Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

Similar to the Iowa statute at issue in *Mathis*, the Oklahoma statute "covers more conduct than generic burglary does." *Mathis*, 136 S. Ct. at 2250. Generic burglary covers only the "unlawful or unprivileged entry into a building or other structure," while second-degree

6

burglary in Oklahoma covers entry into additional places, such as tents, railroad cars, automobiles, trucks, trailers, and vessels.

Because the Oklahoma statute defines burglary more broadly than generic burglary, Mr. Taylor's convictions under the Oklahoma statute "cannot give rise to an ACCA sentence." *Id.* at 2257. Even though the district court correctly declined to apply *Johnson* to grant Mr. Taylor's § 2255 petition, the district court applied the modified categorical approach in its analysis of Mr. Taylor's prior convictions under the Oklahoma statute. And *Mathis* has now made clear that the district court's approach would be reversible error.

Indeed, in cases on direct appeal, other circuit courts have similarly concluded that sentencing enhancements may not be imposed based on prior convictions under state statutes similar to the statute in *Mathis*—i.e., those providing a more expansive list of places where burglary may occur than provided in the generic burglary definition. *See, e.g.*, *United States v. White*, 836 F.3d 437, 444–45 (4th Cir. 2016) (concluding "the West Virginia burglary statute encompasses conduct that is excluded from the definition of generic burglary" because the state statute "covers enclosures other than 'buildings or structures'" (brackets and ellipsis omitted)); *United States v. Edwards*, 836 F.3d 831, 833, 838 (7th Cir. 2016) (vacating sentences and remanding for resentencing where the Wisconsin statute defines burglary more broadly than the Sentencing Guidelines and the district courts consulted state charging documents to decide whether the defendants had been charged with burgling a dwelling as required by the relevant Guideline).

7

But even if reasonable jurists would disagree with the district court's analysis applying the modified categorical approach, we still must address the issue of whether Mr. Taylor may rely on *Mathis* in this collateral proceeding. The district court entered its final judgment in Mr. Taylor's criminal case on December 28, 2001. Mr. Taylor had one year from that date to assert a habeas challenge to his sentence. 28 U.S.C. § 2255(f). Although it has been approximately fifteen years, Mr. Taylor filed the present case under § 2255(f)(3), which allows a prisoner to file a habeas application within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." We must therefore determine whether *Mathis* provides a new right made retroactive on collateral review.

In a plurality opinion in *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court "laid out the framework to be used in determining whether a rule announced in [a Supreme Court opinion] should be applied retroactively to judgments in criminal cases that are already final on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). "Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Id.* This general rule is subject to two exceptions that allow for retroactive application in collateral proceedings, *see id.*, but we need not address the exceptions here because our analysis ends with the question of whether *Mathis* provides a new rule.

"[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301.

Here, the Supreme Court explicitly stated in *Mathis* that it was not announcing a new rule and that its decision was dictated by decades of prior precedent:

> For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements. Courts must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense. They may not ask whether the defendant's conduct—his particular means of committing the crime—falls within the generic definition. And that rule does not change when a statute happens to list possible alternative means of commission: Whether or not made explicit, they remain what they ever were—just the facts, which ACCA (so we have held, over and over) does not care about.

136 S. Ct. at 2257. Thus, *Mathis* did not announce a new rule. And courts applying *Mathis* have consistently reached the same conclusion. *See, e.g.*, *Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016) (concluding Mathis did not announce a new rule that would allow a second or successive habeas petition); *Dimott v. United States*, Nos. 2:06-cr-26-GZS, 2:16-cv-347-GZS, 2016 WL 6068114, at *3 (Oct. 14, 2016) ("*Mathis* has not been recognized as a case that announced a new substantive rule that is retroactively applicable to cases on collateral review. The Supreme Court made clear that it was not breaking new ground in *Mathis . . . .*"); *Blackwell v. United States*, Case No. 4:10-cr-00012, 2016 WL 5849384, at *5 (W.D. Va. Oct. 6, 2016) ("By the Court's own admission, *Mathis* does not set a new rule.").

Because *Mathis* did not announce a new rule, Mr. Taylor cannot rely on it in a § 2255 petition filed nearly fifteen years after the judgment in his criminal case became final. Mr. Taylor's petition is time-barred.

## III.    CONCLUSION

Because neither *Johnson* nor *Mathis* provides a basis for the relief that Mr. Taylor

seeks, and because reasonable jurists would not find the denial of Mr. Taylor's

constitutional claims debatable or wrong, we deny his request for a COA.

Entered for the Court


Carolyn B. McHugh
Circuit Judge