FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

RAYMOND MARK HAMILTON,

    Defendant - Appellee.

No. 17-5035

———————————————

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. Nos. 4:16-CV-00516-TCK-TLW and 4:06-CR-00188-TCK-1)**
———————————————

William A. Glaser, Attorney, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (R. Trent Shores, United States Attorney, Leena Alam, Assistant United States Attorney, Tulsa, Oklahoma; Kenneth A. Blanco, Acting Assistant Attorney General, Trevor N. McFadden, Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., with him on the briefs), for Plaintiff-Appellant.

Barry L. Derryberry, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, with him on the brief), Office of the Federal Public Defender, Tulsa, Oklahoma, for Defendant-Appellee.

———————————————

Before **BRISCOE**, **LUCERO**, and **BACHARACH**, Circuit Judges.
———————————————

**BACHARACH**, Circuit Judge.
———————————————

This appeal grew out of the sentencing of Mr. Raymond Hamilton for possession of a firearm after a felony conviction. *See* 18 U.S.C. 922(g)(1). Mr. Hamilton was sentenced to 190 months' imprisonment under the Armed Career Criminal Act (ACCA) based in part on three Oklahoma convictions for second-degree burglary. Mr. Hamilton moved to vacate his sentence under 28 U.S.C. § 2255, arguing that the district court had improperly applied a mandatory minimum based on the ACCA's unconstitutional Residual Clause. The district court granted the motion and resentenced Mr. Hamilton to time served. The government appeals, and we affirm.

## I.  Mr. Hamilton's Prior Convictions

If a defendant has three prior convictions for violent felonies, the ACCA creates a mandatory minimum sentence of 15 years' imprisonment. 18 U.S.C. § 924(e)(1). Mr. Hamilton had seven prior felony convictions:

1.  a 1975 Louisiana conviction for burglary,

2.  a 1975 Oklahoma conviction for second-degree burglary,

3.  a second Oklahoma conviction for second-degree burglary in 1975,

4.  a 1978 Oklahoma conviction for robbery with firearms,

5.  a 1991 California conviction for assault with a deadly weapon,

6.  a 1993 California conviction for driving under the influence, and

2

7.  a third Oklahoma conviction for second-degree burglary in 2005.

The resulting issue is whether three or more of these convictions involved violent felonies.

Mr. Hamilton does not dispute that two of his prior convictions involved violent felonies: (1) his 1978 Oklahoma conviction for robbery with firearms and (2) his 1991 California conviction for assault with a deadly weapon. One more prior conviction for a violent felony would trigger the ACCA's mandatory minimum.

The government does not argue that a third violent felony could be based on (1) his 1975 Louisiana conviction for burglary[1] or (2) his 1993 California conviction for driving under the influence. Thus, the applicability of the ACCA's mandatory minimum turned on the three remaining convictions in Oklahoma for second-degree burglary.

## II.  Classification as a Violent Felony Under the Enumerated-Offense Clause

To count as a violent felony under the ACCA, a prior conviction must involve a violent felony under the Elements Clause, the Enumerated-Offense Clause, or the Residual Clause. These clauses provide alternative definitions of a violent felony:

---

[1]  In district court, the government argued that the ACCA's mandatory minimum could be based on the 1975 Louisiana conviction. But the government waived this argument on appeal.

3

1.      Elements Clause: An element of the offense includes the use, attempted use, or threatened use of physical force against another person. 18 U.S.C. § 924(e)(2)(B)(i).

2.      Enumerated-Offense Clause: The offense is burglary, arson, extortion, or a crime involving the use of explosives. 18 U.S.C. § 924(e)(2)(B)(ii).

3.      Residual Clause: The crime otherwise creates "a serious potential risk of physical injury to another." *Id.*

The Residual Clause is unconstitutionally vague,[2] and the government does not invoke the Elements Clause. Instead, the government argues that the Oklahoma offense of second-degree burglary fits the Enumerated-Offense Clause.

The Enumerated-Offense Clause would fit only if the Oklahoma version of second-degree burglary had met the definition of generic burglary. *Taylor v. United States*, 495 U.S. 575, 598 (1990). Generic burglary requires "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.*

## A.    The Categorical Approach

To determine whether a crime constitutes generic burglary, we use the categorical approach. *Id.* at 600. Under this approach, the court must decide whether the elements of the prior conviction match the elements of a generic burglary. *See id.* at 600, 602.

---

[2]    *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551, 2556-63 (2015).

4

Oklahoma's statute for second-degree burglary provides:

> Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

Okla. Stat. tit. 21, § 1435. In district court, the government conceded that the Oklahoma statute reaches not only generic burglaries but also non-generic burglaries. But the government insists that Mr. Hamilton's Oklahoma convictions involved generic burglaries.

## B. The Modified Categorical Approach

For this argument, the government relies on the modified categorical approach. Under this approach, we consider a limited class of charging documents to determine whether Mr. Hamilton necessarily admitted the elements of an offense that would constitute a generic burglary. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). But this approach is permissible only if the statute of conviction is divisible. *See Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276, 2284 (2013).

To be divisible, a statute must "comprise[] multiple, alternative versions of the crime." *Id.* A statute comprises "multiple, alternative versions of the crime" if the statutory options constitute elements rather than means. *Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2248-49 (2016). "Elements" are the parts of a statute that the prosecution must

5

prove; "means" are alternative factual methods of committing a single element. *Id.* Thus, we must determine whether the locational alternatives in the Oklahoma statute for second-degree burglary constitute elements or means.

To distinguish between the two, we may consider three sources:

1. state-court opinions,

2. the text of the statute, and

3. the record of conviction.

*See id.* Each source may definitively show whether the locational alternatives constitute elements or means. *Id.* at 2256. After considering the three sources, however, the court might remain uncertain on whether the locational alternatives constitute elements or means. This uncertainty would

- require us to treat the locational alternatives as means, rendering the Oklahoma statute indivisible, and

- preclude use of the Oklahoma convictions to trigger the ACCA's mandatory minimum under the Enumerated-Offense Clause.

*See United States v. Degeare*, 864 F.3d 1241, 1248 (10th Cir. 2018) ("[U]nless we are certain that a statute's alternatives are elements rather than means, the statute isn't divisible and we must eschew the modified categorical approach.")

6

## III.    Indivisibility

After considering the state-court opinions, the text of the statute, and the record of conviction, we remain uncertain on whether the locational alternatives constitute elements or means. In light of this uncertainty, we must regard the locational alternatives in Oklahoma's statute for second-degree burglary as means rather than elements. As a result, Mr. Hamilton's sentence was not subject to the mandatory minimum under the ACCA's Enumerated-Offense Clause.[3]

### A.    Standard of Review

We review de novo whether Mr. Hamilton's prior convictions qualify as violent felonies. *United States v. Cartwright*, 678 F.3d 907, 909 (10th Cir. 2012).

### B.    Oklahoma Opinions

The government argues that

- Oklahoma's case law classifies location as an element of second-degree burglary and

---

[3]    We addressed this issue in *United States v. Taylor*, stating that the modified categorical approach could not be used for Oklahoma's crime of second-degree burglary. *United States v. Taylor*, 672 F. App'x 860, 863 (10th Cir. 2016) (unpublished). But *Taylor* was unpublished, and our statement constituted dicta because we resolved the case on timeliness rather than the merits. *Id.* at 864-65.

- Oklahoma's uniform jury instructions demonstrate that location constitutes an element of the offense.[4]

Like Oklahoma case law, the Oklahoma uniform jury instructions provide useful guidance on the content of state law. *See United States v. Titties*, 852 F.3d 1257, 1270 (10th Cir. 2017) ("Oklahoma's Uniform Jury Instructions provide an additional source of state law guidance" to distinguish between means and elements.); *see also De Leon v. Lynch*, 808 F.3d 1224, 1231 n.9 (10th Cir. 2015) ("[T]he uniform jury instructions have often guided both the [Oklahoma Court of Criminal Appeals] and our court in defining the bounds of Oklahoma criminal law."). But Oklahoma's case law and uniform jury instructions do not definitively require classification as an element.

The Oklahoma Court of Criminal Appeals has referred to the locational alternatives as different ways of satisfying a single element. *See Maines v. State*, 264 P.2d 361, 363 (Okla. Crim. App. 1953) ("The first requisite of burglary is the breaking and entering of a building, booth, tent, railroad car, vessel or other structure or erection in which any property is kept."). Nonetheless, the government contends that Oklahoma courts treat

---

[4] The government contends that the uniform jury instructions should be considered as part of the inquiry into the record of conviction. But in Oklahoma, the trial judge can independently determine whether the uniform jury instructions accurately state the law. Okla. Stat. tit. 12, § 577.2. As a result, Oklahoma's uniform jury instructions do not necessarily bear on the record of conviction.

8

locational alternatives as elements of the offense. For this contention, the government relies primarily on *Ross v. State*, 147 P.2d 797 (Okla. Crim. App. 1944). There the Oklahoma Court of Criminal Appeals stated that "an indictment or information for burglary . . . must allege every fact and circumstance necessary to constitute the offense, including the time, place, ownership, and a description of the premises." *Ross*, 147 P.2d at 799. Because the charging document must allege the place being burgled, the government contends that the place must constitute an element.

But Oklahoma law requires charging documents to allege not only the elements but also enough facts for a defendant to prepare for trial and to defend against double jeopardy. *See id.* at 799 (noting that an indictment must enable a defendant "'to prepare for his trial'" and "'to defend himself against any subsequent prosecution for the same offense'" (quoting *Sparkman v. State*, 93 P.2d 1095, 1096 (Okla. Crim. App. 1939))); *see also World Publ'g Co. v. White*, 32 P.3d 835, 843 (Okla. 2001) ("Although an information need not allege each element of a crime to withstand a due process attack, it must give the defendant notice of the charges sufficient to mount a defense."). Thus, *Ross* does not require us to treat location as an element.

The government also relies on Oklahoma opinions referring to the type of burgled property as an element of the offense. *E.g.*, *Williams v. State*, 762 P.2d 983, 986 (Okla. Crim. App. 1988) ("The elements of

9

second degree burglary of an automobile are: (1) breaking; (2) entering; (3) an automobile . . . ."); *Willard v. State*, 744 P.2d 1276, 1277 (Okla. Crim. App. 1987) ("Elements of the crime of second degree burglary are (1) breaking; (2) entering; (3) a building . . . ."). This reliance is misguided for two reasons.

First, these opinions were not addressing the distinction between elements and means. Thus, these opinions are not "binding precedent on [that] point." *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38 (1952).

Second, in these cases, the prosecutors charged just one of the locational alternatives and the jury found guilt on that alternative. Because only one statutory alternative was charged, "it [did] not matter for that particular case whether the State, as a general matter, would categorize that fact . . . as an 'element' or as a 'means.'" *Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2264 (2016) (Breyer, J., dissenting).

For both reasons, the references to the type of burgled property are not definitive. But the government also points to Oklahoma's uniform jury instructions. For second-degree burglary, the uniform jury instructions list the following elements:

First, breaking;

Second, entering;

10

Third, **a/an building/room/booth/tent/(railroad car)/ automobile/truck/trailer/vessel/structure/erection**;

Fourth, of another;

Fifth, in which property is kept;

Sixth, with the intent to **steal/(commit any felony)**.

Okla. Unif. Jury Instr. CR 5-13 (emphases in original).

An introductory provision states that "[s]lashes are used to indicate that the judge should select all alternatives that are supported by the evidence." Okla. Unif. Jury Instr. CR Cross Reference. The provision adds that "[i]n some cases, there may have been evidence offered for more than one alternative, and if so, the trial judge should include them in the disjunctive." *Id.*

The locational alternatives in the uniform jury instructions are separated by slashes. Thus, when supported by the evidence, the judge can instruct the jury on more than one location. The ability to instruct jurors in the alternative suggests that the listed locations may constitute means rather than elements. *See Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2249 (2016) (stating that alternatives constitute means when they "itemize the various places that crime could occur as disjunctive factual

11

scenarios rather than separate elements, so that a jury need not make any specific findings . . . on that score").[5]

The government questions whether locations can be charged in the alternative, pointing to Instruction 5-11. This instruction states that a defendant is charged with burglary "of [Description of Premises], located at [Address or Location], [Name of County] County, Oklahoma . . . on [Date]." Okla. Unif. Jury Instr. CR 5-11 (emphases omitted). The committee comments explain that "[t]he time, place, date, and description of the premises . . . must be proved by the State to sustain the conviction." *Id*. According to the government, this instruction shows that a judge can instruct the jury on only one location.

But even if the government must prove the location being burgled, the court can still instruct the jury on alternative locations. For example, when the burgled location fits two of the listed locations, such as a "booth" and "tent," the State could charge the defendant with burgling "a booth or a tent." The State would still need to prove the place burgled. But the jury

---

[5]    The government admits that "[t]hese preliminary instructions, standing alone, may suggest that the locations in § 1435 are merely different means of satisfying the same element." Appellant's Opening Br. at 24.

12

would not need to decide whether the location being burgled was a "booth" or a "tent."[6]

By bunching the locational alternatives into a single element, the uniform jury instructions suggest that location may involve only a means of satisfying an element. We addressed a similar issue in *United States v. Titties*, 852 F.3d 1257 (10th Cir. 2017). There we concluded that the Oklahoma criminal statute for pointing a deadly weapon is indivisible because the statutory alternatives constitute means. *Titties*, 852 F.3d at 1271. For this conclusion, we relied in part on Oklahoma's uniform jury instructions, which state:

> "Fifth, (for the purpose of threatening)/(with the intention of discharging the firearm)/(with any malice)/(for any purpose of injuring, either through physical injury or mental or emotional intimidation)/(for purposes of whimsy/humor/[a prank])/(in anger or otherwise)."

*Id*. (emphasis omitted) (quoting Okla. Unif. Jury Instr. CR 6-42 (alterations in original)). Because the uniform jury instruction bunches the

---

6    The government points out that Mr. Hamilton has not cited any Oklahoma burglary cases where the charging document alleged multiple alternative locations. The absence of such a citation could support classification of location as an element. But the absence of such a citation could also reflect only the charging practices among Oklahoma prosecutors. *See United States v. Diaz*, 865 F.3d 168, 177 (4th Cir. 2017) (rejecting a similar argument by the government, stating that the "government's choices in how it charges" a given offense should not "dictate our legal interpretation of the statute"). As a result, the State's alleged practice of charging burglary based on a single locational alternative would not prove dispositive.

13

statutory alternatives into a single element, we concluded that the jury would likely not need to agree on a particular alternative to satisfy the element. *Id.*

Similarly, Oklahoma's uniform jury instruction for second-degree burglary bunches the locational alternatives into a single element. Okla. Unif. Jury Instr. CR 5-13 (identifying the third element as "a/an building/room/booth/tent/(railroad car)/automobile/truck/trailer/vessel/ structure/erection" (emphasis omitted)). The bunching of the locational alternatives may suggest that the jury would not need to agree on a particular location to satisfy this element. The uniform jury instructions therefore do not definitively require us to treat the locational alternatives in Oklahoma's statute for second-degree burglary as elements rather than means.

\* \* \*

Because Oklahoma's case law and uniform jury instructions do not show with certainty whether the locational alternatives constitute elements or means, we must look elsewhere. *See Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2256 (2016) (noting that "if state law fails to provide clear answers," courts should continue with the analysis).

## C.     The Text of the Statute

We therefore turn to the text of the Oklahoma statute. The government makes two textual arguments for classifying the locational alternatives as elements:

1.     The statute does not contain an umbrella term encompassing all of the listed alternatives.

2.     The Oklahoma burglary statute does not resemble the burglary statute at issue in *Mathis*.

Both arguments fail.

### 1.     Omission of an Umbrella Term

An "umbrella term" is a broad term, like "premises," that encompasses the other terms in a series. *See id.* at 2257. The use of an umbrella term could indicate that the locational alternatives constitute means rather than elements. *See id.*

The district court concluded that the Oklahoma statute for second-degree burglary does not contain an umbrella term. The absence of an umbrella term, according to the government, implies that the locational alternatives are distinct elements. This implication is unclear and weak when applied to Oklahoma's statute for second-degree burglary. *Cf. United States v. Titties*, 852 F.3d 1257, 1268 n.11 (10th Cir. 2017) (stating that under *Mathis*, the presence or absence of an umbrella term is just one of several ways to differentiate between means and elements).

15

This statute criminalizes breaking and entering a set of listed locations, followed by the phrase "other structure or erection." Okla. Stat. tit. 21, § 1435. This phrase includes "structure," a broad term defined as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together . . . ." *Structure*, Black's Law Dictionary (10th ed. 2014).[7] Based on this definition, the phrase "other structure or erection" unquestionably encompasses at least some of the locations named in the statutory list.[8] Because some of the listed locations are considered a "structure or erection," use of this phrase could suggest that some of the listed locations overlap. As a result, some of the listed locations might be considered examples of a "structure or erection," which could support classification as means rather than elements. *See Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2256 (2016) ("[I]f a

---

[7]     In Oklahoma, Black's Law Dictionary supplies an accepted reference for definitions of statutory terms. *See, e.g.*, *Virgin v. State*, 792 P.2d 1186, 1188 (Okla. Crim. App. 1990) (using Black's Law Dictionary to define statutory terms).

[8]     The government concedes that the term "other structure or erection" "can embrace some of the other locations." Appellant's Opening Br. at 19; *see also* Appellant's Reply Br. at 1-2 (stating that a "structure or erection" "embraces some, but not all, of the other locational alternatives"); *id.* at 9 ("[T]he term 'structure or erection' can embrace some of the other listed locations.").

statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission.").

In light of the broad phrase ("structure or erection"), the locational alternatives might simply reflect different means of committing a second-degree burglary.

### 2. Comparison to the Law Involved in *Mathis*

In *Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243 (2016), the Supreme Court considered whether the locational alternatives constituted elements or means under Iowa's burglary statute. There the Court classified the location as a means. *See Mathis*, 136 S. Ct. at 2256-57. In light of this classification, Mr. Hamilton asserts that Iowa's burglary statute resembles Oklahoma's; the government underscores the differences. In our view, the Iowa burglary statute bears both similarities to and differences with the Oklahoma statute.

Focusing on the similarities, Mr. Hamilton points out that

- a disjunctive list appears in both the Iowa statute and the Oklahoma statute and

- Iowa's statute contains a catch-all term ("occupied structure"), resembling the Oklahoma catch-all term ("other structure or erection").

But differences exist as well. For example, Iowa's statute contains a separate statutory definition of the broad term; Oklahoma's statute does not. *Id*. at 2259 (Breyer, J., dissenting).

17

The government persuasively argues that the similarities tell us little. For example, though the Iowa statute contains a broad term ("occupied structure"), the *Mathis* majority never referred to that term. *See id.* at 2250 (majority op.).

But Mr. Hamilton also points out that the differences between the Iowa and Oklahoma statutes may tell us little, for *Mathis* did not suggest that the format of Iowa's statute was the only way to list alternatives as means. *See United States v. Lobaton-Andrade*, 861 F.3d 538, 543-544 (5th Cir. 2017) (per curiam) (stating that even though *Mathis* had regarded the existence of illustrative examples as a characteristic of means, *Mathis* did not hold that the converse would require classification as an element); *see also United States v. Gundy*, 842 F.3d 1156, 1174 (11th Cir. 2016) (Jill Pryor, J., dissenting) ("Although state statutes with a single locational element defined separately have been held to be indivisible in *Mathis* . . . , there is no truth to the converse, that the lack of a single locational element with a separate definition section means a disjunctively phrased statute is divisible.").

* * *

The statutory differences leave room to distinguish *Mathis*. But differences alone do not compel a difference in result. Thus, we cannot determine whether the Oklahoma statute is divisible by comparing and

18

contrasting the Iowa and Oklahoma statutes.[9] In these circumstances, we remain uncertain over whether Oklahoma's locational alternatives constitute elements or means.

### D.    The Record of Conviction

We have one more place to look: "the record of a prior conviction itself." *Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2256 (2016). We can "peek" at the record of conviction to determine whether the locational alternatives constitute elements or means. *Id.* at 2256-57 (internal quotation marks omitted). The government argues that the charging documents show that the locational alternatives constitute elements rather than means. We disagree.

The charging documents in the two 1975 Oklahoma burglaries alleged a break-in into a "certain building." Appellant's App'x at 45, 48. The charging document for the 2005 burglary alleged a break-in into a "residence." *Id.* at 51. According to the government, specification of the locations in the charging documents must mean that location constitutes an element of the offense.

---

[9]    The government analogizes the Oklahoma statute to the Georgia burglary statute in *United States v. Gundy*, 842 F.3d 1156 (11th Cir. 2016). There the Eleventh Circuit Court of Appeals concluded that the text of the statute—which listed several locational terms in the disjunctive— establishes that the locational terms constitute elements rather than means. *Gundy*, 842 F.3d at 1166-67. To the extent that the Georgia statute resembles Oklahoma's statute, we disagree with *Gundy*'s conclusion.

But as previously discussed, charging documents often allege additional facts that are not elements of the crime. *See United States v. Edwards*, 836 F.3d 831, 838 (7th Cir. 2016) ("[B]ecause the charging documents may allege additional facts, the inclusion of 'dwelling' tells us nothing about whether it's an element of burglary or simply a factual description."). Moreover, it is unsurprising that the burgled locations were included in the charging documents because these locations had not been contested. As a result, "inclusion of the uncontested locations tells us little about whether the State of Oklahoma would regard the location as an element or a means if the location were contested." *See Mathis*, 136 S. Ct. at 2264 (Breyer, J., dissenting).

In addition, the charging document for the 2005 burglary alleged the burglary of a "residence." But Oklahoma's statute for second-degree burglary does not use the term "residence." And a residence can consist of a fixed building (like a conventional house) or a vehicle (like a trailer). Indeed, Oklahoma courts have referred to the burglary of a trailer as a residential burglary. *See Chambers v. State*, 720 P.2d 741, 742 (Okla. Crim. App. 1986) (referring to the defendant's conviction of burglary of a "trailer residence"); *see also Anderson v. State*, 658 P.2d 501, 502 (Okla. Crim. App. 1983) (referring to the search of a "residence trailer"). Thus, the charging document's mention of a "residence" does not clarify whether the statutory location would constitute an element or means.

The government downplays use of the term "residence," contending that other allegations in the charging document establish that the "residence" was a "building." Appellant's Reply Br. at 16. But the nature of the residence does not remove the uncertainty on classification as an element or means: If location were an element, why would the charging document use a term ("residence") absent from the statutory list of locations? *See United States v. Ritchey*, 840 F.3d 310, 321 (6th Cir. 2016).[10] The use of this term in the charging document leaves us with uncertainty over whether the locational alternatives constitute means or elements.

\* \* \*

Neither Oklahoma case law, the text of the Oklahoma statute, nor the record of conviction establishes with certainty whether the locational alternatives constitute elements or means. In light of the uncertainty, we must treat the Oklahoma statute as indivisible.

---

[10]  In *Ritchey*, the burglary statute listed pieces of property that could be burgled: "'a tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat, ship, shipping container, or railroad car.'" *United States v. Ritchey*, 840 F.3d 310, 320 (6th Cir. 2016) (emphasis omitted) (quoting Mich. Comp. Laws § 750.110). In addressing whether these pieces of property constituted elements or means, the *Ritchey* court consulted the records of the defendant's past convictions. *Id.* at 321. But the term "garage," which the defendant was charged with burgling, was not one of the pieces of property listed in the burglary statute. *Id.* The court reasoned that it was therefore "implausible that this language identifies a particular statutory alternative, much less treats it as an element." *Id.*

Because the statute is indivisible, we cannot use the modified categorical approach to determine whether Mr. Hamilton committed an offense satisfying the generic definition of burglary. *See Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2256 (2016) (explaining that if statutory alternatives are means, the court cannot apply the modified categorical approach). Thus, we conclude that

- Mr. Hamilton's sentence was not subject to the ACCA's mandatory minimum under the Enumerated-Offense Clause and

- application of the ACCA's mandatory minimum must have been based on the constitutionally infirm Residual Clause.

## IV.  Conclusion

Mr. Hamilton's three Oklahoma convictions for second-degree burglary could have been based on conduct falling outside the generic definition of burglary. Thus, the district court could apply the ACCA's mandatory minimum only if the court concludes with certainty that Oklahoma's statute for second-degree burglary is divisible. We lack such certainty.

We must therefore regard the Oklahoma statute as indivisible, precluding use of the modified categorical approach. Without that approach, we conclude that the Oklahoma offense of second-degree burglary does not fit the Enumerated-Offense Clause. As a result, the ACCA's mandatory minimum could have been based only on the Residual

22

Clause. Because the Residual Clause is unconstitutionally vague, we affirm the grant of Mr. Hamilton's § 2255 motion.

17-5035, *United States v. Hamilton*
**BRISCOE**, Circuit Judge, concurring in the result.

I agree with the majority that we should affirm the district court. However, I reach that result after concluding that Okla. Stat. tit. 21, § 1435 is indivisible, which differs from the majority's conclusion that a *Mathis* analysis is inconclusive on the question of divisibility.

**I**

To determine whether a predicate offense qualifies as a violent felony under § 924(e)(2)(B)(ii)'s enumerated offenses clause, we begin by addressing whether the statute is broader than the generic version of the crime. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If the statute "sets out a single (or 'indivisible') set of elements to define a single crime," *Mathis*, 136 S. Ct. at 2248, we apply the categorical approach and compare the least of the acts criminalized by the state statute to the generic definition of the offense. *United States v. Titties*, 852 F.3d 1257, 1265 (10th Cir. 2017). But "when the statute is divisible, in that it contains more than one crime, the modified categorical approach reveals the relevant elements for the comparison under the categorical approach." *Id.*

There are three ways to discern whether a statute is divisible. *See Mathis*, 136 S. Ct. at 2256. "First, in some instances, the statute on its face will provide the answer." *Titties*, 852 F.3d at 1267. That is, "if statutory alternatives carry different punishments," then these alternatives must be elements. *Mathis*, 136 S. Ct. at 2256. But "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of

commission." *Id.* (quoting *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)). Alternatively, "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.* Second, a state court decision may provide the answer to divisibility, as it did in *Mathis*. *Id.* (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). And third, "if state law fails to provide clear answers," the court may "peek" at the underlying record to see whether it indicates whether the listed items are elements of the offense. *Id.* at 2256–57.

"If these tools—statutory text, state law authority, and record documents—do not answer the means/elements question, then a court 'will not be able to satisfy *Taylor*'s demand for certainty' that the offense qualifies as an ACCA conviction." *Titties*, 852 F.3d at 1268 (quoting *Mathis*, 136 S. Ct. at 2257).

In this case, we apply the principles set out in *Mathis* to Okla. Stat. tit. 21, § 1435, which states:

> Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

Okla. Stat. tit. 21, § 1435 (1961).

## II

In the absence of any on-point ruling from the Oklahoma courts (or a prior decision from this court deciding the question), we must analyze whether § 1435 is

divisible.  After conducting that analysis, I agree with the majority and the district court that § 1435 is indivisible, though I reach that result by a somewhat different route.

At the outset, I conclude the text of § 1435 points in favor of indivisibility, though it is not alone determinative.  Like the Iowa burglary statute at issue in *Mathis*—Iowa Code § 713.1, which gets its definitions from Iowa Code § 702.12—§ 1435 includes a list of locations where the perpetrator could break and enter to commit a burglary.  At first blush, it would then appear that § 1435 is indivisible, just as *Mathis* concluded Iowa's burglary statute was indivisible.

Yet, there is a distinction between § 1435 and the statute at issue in *Mathis*.  And the distinction prevents the text of § 1435 from being determinative.  The text of Iowa Code § 702.12 included an "umbrella term" to define a category of locations, *Mathis*, 136 S. Ct. at 2257, followed by a list of "illustrative examples."[1]  *Id.* at 2256.  The umbrella term in Iowa's burglary statute is "occupied structure," Iowa Code § 713.1, and the "illustrative examples" are "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." Iowa Code § 702.12.  Critically, all of the illustrative examples fit under the umbrella term.

---

[1] *Mathis* included the discussion of an "umbrella term" within its peek at the state court record, and left it unclear whether umbrella term analysis was limited to merely that part of the divisibility analysis.  I believe it is not so limited.

3

Further, *Mathis* provided another hypothetical example of an umbrella term in an indivisible statute. *Mathis*, 136 S. Ct. at 2249. The Court stated, "[t]o use a hypothetical adapted from two of our prior decisions, suppose a statute requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify." *Id.* (citing *Descamps v. United States*, 570 U.S. 254 (2013); *Richardson v. United States*, 526 U.S. 813, 817 (1999)). The umbrella term there ("deadly weapon") also encompasses all of the illustrative examples ("knife, gun, bat, or similar weapon"). Therefore, it is clear from *Mathis* that to be an umbrella term the provision or phrase at issue must encompass all of the illustrative examples.

Section 1435 does not fit that rule. Instead, it lists ten locations,[2] and this listing is not preceded or succeeded by an all-encompassing umbrella term. Hamilton argues that one of the locations—"structure or erection"—is broad enough to also describe other locations in the list. But because some of the terms in the list, such as "automobile" or "vessel," are not structures or erections, there is no umbrella term here as is described in *Mathis*.

Therefore, an examination of the statutory text of § 1435 points in favor of indivisibility, but does not definitively answer the question because of distinctions between the phraseology in § 1435 and the statute at issue in *Mathis*.

---

[2] Those terms being (1) "building," (2) "room," (3) "booth," (4) "tent," (5) "railroad car," (6) "automobile," (7) "truck," (8) "trailer," (9) "vessel," and (10) "other structure or erection."

However, when we consider the text of § 1435 in conjunction with state law sources, it becomes clear that the locational alternatives in § 1435 are means of the same element in an indivisible statute. Most critically, the Oklahoma Uniform Jury Instructions point us in this direction. *Titties*, 852 F.3d at 1270 ("Oklahoma's Uniform Jury Instructions provide . . . [a] source of state law guidance.").[3] Oklahoma's Uniform Jury Instructions for second-degree burglary state that:

> No person may be convicted of burglary in the second degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
> First, breaking;
> Second, entering;

[3] There is some confusion about where the uniform jury instructions fit within *Mathis*' three prongs. *See Titties*, 852 F.3d at 1270 (analyzing the uniform jury instructions as a source of state law); *United States v. Degeare*, 884 F.3d 1241, 1254 n.6 (10th Cir. 2018) (analyzing the uniform jury instructions in the peek at the state court record); *United States v. Pam*, 867 F.3d 1191, 1205 (10th Cir. 2017) (analyzing the uniform jury instructions alongside the statutory text). I believe that when a defendant pled guilty to the offense at issue—as Hamilton did with the burglaries at issue here—it is proper to look at the uniform jury instructions as a source of state law. *Titties*, 852 F.3d at 1270 n.15 (noting that when "the defendant pled guilty and no jury instructions were given, the state's uniform jury instructions can provide insight into the means/elements question"). It is true that uniform jury instructions are not mandatory in every state. *Compare State v. Wilson*, 867 P.2d 1175, 1177 (N.M. 1994) (holding New Mexico's Uniform Jury Instructions are mandatory and presumptively correct if adopted by the New Mexico Supreme Court) *with* Okla. Stat. tit. 12, § 577.2 (stating "the OUJI instructions shall be used unless the court determines that it does not accurately state the law"). Nonetheless, state trial courts use the uniform jury instructions in the vast majority of trials, and the uniform instructions are a helpful guide to determining what proofs are required to convict. In that way, uniform jury instructions can elucidate "which things must be charged (and so are elements) and which need not be (and so are means)." *Mathis*, 136 S. Ct. at 2256. If however, the defendant went to trial on the underlying offense, then we look to uniform jury instructions only if those were the instructions actually given. If the instructions given varied from the uniform instruction, the instructions given would fall under *Mathis*' third prong, which examines the record documents. *Id.*

5

> Third, **a/an building/room/booth/tent/(railroad car)/automobile/truck/trailer/ vessel/structure/erection**;
> Fourth, of another;
> Fifth, in which property is kept;
> Sixth, with the intent to **steal/(commit any felony)**.

Okla. Unif. Jury Instrs. – Crim. 5-13 (emphasis in original) (citing § 1435).

As the majority notes, Op. at 11, an introductory provision explains that "[s]lashes are used in an instruction to indicate that the judge should select all the alternatives that are supported by the evidence." Okla. Unif. Jury Instrs. Crim. Cross Reference; *see also Titties*, 852 F.3d at 1271 (noting that some Oklahoma Uniform Jury Instructions "bunch[] together [a list of] alternatives into a single element"). "Boldface type is used whenever the judge is required to select among alternatives or fill in names." Okla. Unif. Jury Instrs. Crim. Cross Reference.

In *Mathis*, the Court concluded "[t]he listed premises in Iowa's burglary [statute] . . . are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Mathis*, 136 S. Ct. at 2256 (quoting *Duncan*, 312 N.W.2d at 523). Here, the Oklahoma Uniform Jury Instructions also refer to the list of locations in a burglary statute as "alternative[s]." And the Oklahoma Uniform Jury Instructions further permit the trial judge to instruct on "all the alternatives that are supported by the evidence." Okla. Unif. Jury Instr. Crim. Cross Reference. The similarities between the way Iowa and Oklahoma treat their respective burglary statutes confirms what the text of § 1435 indicated: the alternative locations for burglary are means of the same element.

Nothing in Oklahoma case law undermines this conclusion. The government points out that the Oklahoma Court of Criminal Appeals (OCCA)[4] has noted that "an indictment or information for burglary . . . must allege every fact and circumstance necessary to constitute the offense, including the time, place, ownership, and a description of the premises." *Ross v. State*, 147 P.2d 797, 799 (Okla. Crim. App. 1944) (citing *Simpson v. State*, 113 P. 549 (Okla. Crim. App. 1911)). And the OCCA held these "fact[s] and circumstance[s]"—including the "description of the premises"—are the "essential ingredients of the crime of burglary in the second degree." *Id.* According to the government, this aligns with *Mathis*, which noted that if a statutory alternative "must be charged" and "prove[n] to a jury," then it is an element. *Mathis*, 136 S. Ct. at 2256–57.

Yet, for two reasons, *Ross* and *Simpson* do not preclude the conclusion that § 1435 is indivisible. First, the facts and circumstances described in *Ross* and *Simpson* are required "to inform the accused of the particular crime of which he is charged." *Simpson*, 113 P. at 550. Oklahoma prosecutors have to identify specific characteristics of the location burglarized, not because each location is part of a unique crime, but rather because a description of the location enables the defendant to prepare a defense to the charge. Therefore, as the district court put it, *Ross* and *Simpson* "were not directly addressing the means/elements distinction." ROA, Vol. I at 73.

Second, *Ross* and *Simpson* do not undermine the conclusion that the locational alternatives in § 1435 are means because they leave open the possibility of charging

_____

[4] Prior to 1959, this court was the Oklahoma Criminal Court of Appeals. I use OCCA for all references to this court.

7

multiple locational alternatives in the same case. And if a prosecutor can charge multiple alternatives in the same case, that "is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Mathis*, 136 S. Ct. at 2257.

The possibility of charging multiple alternatives from § 1435's locational list is best seen by example. For instance, say a perpetrator broke into a Chevrolet El Camino and stole items. An Oklahoma prosecutor could charge that person with burglarizing an "automobile," or with burglarizing a "truck," at a particular location on a certain date, and could specifically identify the vehicle by listing the license plate information and owner. *Ross* and *Simpson* tell us the "indictment or information for burglary . . . must allege every fact and circumstance necessary to constitute the offense, including the time, place, ownership, and a description of the premises." *Ross*, 147 P.2d at 799; *Simpson*, 113 P. at 550. And *Ross* goes on to say that the "location" of the burglary is "essential." *Ross*, 147 P.2d at 799.

An indictment charging the defendant with burglarizing a Chevrolet El Camino by breaking and entering a "truck or automobile" at 11 p.m. on January 1, 2018, with the license plate of ABC123 with intent to steal items inside sufficiently alleges "every fact and circumstance" of the burglary and describes the premises in detail. And there is nothing in *Ross* or *Simpson* that indicates the jury must agree on the location burglarized.

8

That is, the conviction in the hypothetical case just described would be valid even if six jurors found the Chevrolet El Camino was a truck, and six found it to be an automobile.[5]

The government points out that there is no evidence that an Oklahoma prosecutor has ever charged multiple locations in the same burglary prosecution. Gov't Reply Br. at 8–9; *but cf. Titties*, 852 F.3d at 1271 n.18 ("Oklahoma clearly did charge multiple alternatives."). But our inquiry into state sources of law is not an inquiry to determine the charging practices of Oklahoma prosecutors. Rather, we are asked to decide the legal question of whether the statutory alternatives contained in § 1435 are elements or means. As regards Oklahoma's requirement of specifically identifying the location burglarized, § 1435 does not appear to limit an indictment to listing only one of the statute's locational alternatives.

Aside from its arguments based on *Ross* and *Simpson*, the government argues that before the Supreme Court began to speak of a distinction between means and elements in criminal statutes, the OCCA stated that the "*[e]lements* of the crime of second degree burglary are (1) breaking; (2) entering; (3) a building; (4) of another; (5) in which property is kept; (6) with intent to steal." *Willard v. State*, 744 P.2d 1276, 1277 (Okla. Crim. App. 1987) (emphasis added). Like the majority, Op. at 9–10 (citing *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38 (1952)), I do not believe *Willard* answers the divisibility question or undercuts the view that a prosecutor could charge multiple

---

[5] Courts have used both "automobile" and "truck" to refer to a Chevrolet El Camino. *See, e.g.*, *State v. Vandouris*, 84 Wash. App. 1071 (1997) ("a 1976 Chevrolet El Camino automobile"); *State v. Wyrick*, 241 S.E.2d 355, 356–57 (N.C. 1978) ("a green 1972 Chevrolet El Camino truck").

9

locations in the same burglary prosecution.  Just because the OCCA happened to use the magic word ("elements") does not mean it was discussing the divisibility question at issue here or referring to "a building" as a unique element.  If anything, the OCCA's holding that "a building" is but one element of § 1435 indicates that Oklahoma courts treat the locational alternatives in § 1435 as interchangeable means that can be referred to in shorthand as "a building."

Therefore, there is nothing in the OCCA case law to undermine the conclusion that § 1435 is an indivisible statute.[6]

### III

Since § 1435 is indivisible, we must apply the categorical approach and ask whether § 1435 "'sweeps more broadly' than the ACCA definition—that is, if some conduct would garner a conviction but would not satisfy the [enumerated offenses clause] definition.'" *Titties*, 852 F.3d at 1266 (alteration omitted) (quoting *Descamps*, 133 S. Ct. at 2283).  We have already answered this question, holding that because § 1435 "defines burglary in terms broader than the [generic] definition, [a prior § 1435] conviction cannot as a categorical matter provide a basis for enhancement under the ACCA." *United States v. Green*, 55 F.3d 1513, 1516 (10th Cir. 1995).[7]

---

[6] Because a review of the text of § 1435 and the corresponding state law sources provides a "clear answer[]" on the divisibility question, there is no need to turn to a "peek" at the record. *See Mathis*, 136 S. Ct. at 2256.

[7] In *Green*, we applied the modified categorical approach without first considering whether § 1435 is divisible. *Green*, 55 F.3d at 1516.  *Green* has thus been overruled by subsequent case law such as *Descamps* and *Mathis* to the extent it stands for the

(Continued . . .)

10

Therefore, Hamilton's three predicate offenses under § 1435 should not have

counted as violent felonies for an ACCA enhancement. I would affirm the district court.

_____

(cont'd)
proposition that a court can analyze § 1435 under the modified categorical approach
without first determining whether the statute is divisible. Yet, *Green* remains good law
for its holding that, on its face, the text of § 1435 "defines burglary in terms broader than
the [generic] definition." *Id.* at 1516 (noting that the list of locations in § 1435 is broader
than the generic definition of burglary, which is "any crime . . . having the basic elements
of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent
to commit a crime" (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)). Further,
the parties here do not appear to contest that § 1435's text is broader than generic
burglary.